## STATE OF NORTH CAROLINA v. JAMES HENRY SNEED

### No. 62

### (Filed 1 February 1974)

**1. Constitutional Law § 32— effective assistance of counsel**

The general rule is that the incompetency of counsel for the defendant in a criminal prosecution is not a denial of his constitutional right to effective counsel unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice.

**2. Constitutional Law § 32— effective assistance of counsel**

The question of constitutional inadequacy of representation cannot be determined solely upon the amount of time counsel spends with the accused or upon the intensiveness of his investigation.

**3. Constitutional Law § 32—effective assistance of counsel— divided loyalties — role of advocate**

Counsel cannot be hobbled by divided loyalties and cannot assume the role of *amicus curiae* but must function in the active role of an advocate.

**4. Constitutional Law § 32— effective assistance of counsel — standard of proof**

A stringent standard of proof is required on the question of whether an accused has been denied the effective representation of counsel.

5. **Constitutional Law § 32— effective assistance of counsel — case by case decision**

   Each case must be approached on an *ad hoc* basis, viewing circumstances as a whole, in order to determine whether an accused has been deprived of the effective assistance of counsel.

6. **Constitutional Law § 32— effective assistance of counsel — advising defendant to make statement to police — witnesses obtained as result of statement**

   Where a defendant charged with the murder of a highway patrolman falsely told his court-appointed attorney that other persons had forced him at gunpoint to drive them from the scene of a break-in and that someone sitting in the back seat of his vehicle had thereafter shot the patrolman, the attorney advised defendant to make a statement to the police, and defendant subsequently made statements to the police in which he stated that someone else did the shooting without prior knowledge on his part and named two other persons who were in his vehicle at the time of the shooting, the conduct of defendant's court-appointed attorney did not amount to a denial of effective assistance of counsel so as to preclude the State from using the two persons named by defendant as witnesses against defendant. Sixth Amendment to U. S. Constitution; Art. I, §§ 19 and 23 of the N. C. Constitution.

7. **Constitutional Law § 32— effective assistance of counsel — acquaintance with deceased — law practice with public officials**

   An attorney appointed to represent a defendant charged with murder of a highway patrolman was not fettered by divided loyalties by reason of his casual acquaintance with the patrolman or by the fact that the murder caused much public resentment and the attorney was a member of a firm which included the Speaker-Elect of the N. C. House of Representatiives and the Mayor of the Town of Roxboro.

APPEAL by defendant from *McKinnon, J.,* 5 March 1973 Session of PERSON.

Defendant was tried upon a bill of indictment charging that "James Henry Snead . . . on the 27th day of September 1972, . . . feloniously, wilfully and of his malice aforethought, did kill and murder Joe G. Wright. . . . "

Mr. Charles Hubbard, of the Person County Bar, was appointed to represent defendant on 29 September 1972. Mr. Hubbard was relieved of his duty to further represent defendant prior to the probable cause hearing in District Court, and defendant was thereafter represented by his privately retained counsel, Clayton and Ballance.

Upon arraignment on said indictment, defendant entered a plea of not guilty.

The State's evidence, in summary, tends to show:

On 27 September 1972, shortly after 1:00 o'clock p.m., Pasco Grinstead, Douglas Lee Cameron and Cecil O. Gentry, who were working at a tobacco barn, observed Patrolman Joe Wright, of the North Carolina Highway Patrol, as he stopped a tri-tone 1953 to 1956 Mercury automobile near the intersection of rural unpaved road 1735 and rural paved road 1715 in Person County. Patrolman Wright was operating a brown unmarked patrol car which he stopped about ten feet behind the Mercury automobile. Patrolman Wright approached the Mercury automobile, and when he was within about ten feet of the front door of that car, the person sitting in the driver's seat shot him three or four times. Patrolman Wright fell to the ground and the Mercury moved away. Mr. Grinstead went to the patrolman to render aid and thereafter summoned help. These witnesses saw three persons in the Mercury automobile and described them as black men, the driver being of a lighter complexion than the other two.

When the State offered the witness Levy Lowe, defendant's counsel objected on the ground that the conduct of his court-appointed lawyer amounted to a denial of assistance of effective counsel so as to preclude the introduction of this testimony. Judge McKinnon thereupon conducted a *voir dire* hearing before ruling on the admissibility of this testimony.

On *voir dire,* defendant James Henry Sneed testified that on 29 September 1972 police officers came to his home in Durham and inquired of him whether he owned a Mercury automobile. He replied that he did not. He was thereafter warned of his Constitutional rights, and carried to the Highway Patrol Station in Durham and from there to the police department in Roxboro. He requested a lawyer and made no statement to the officers. On the afternoon of 29 September 1972, he was served with a warrant charging him with murder. Mr. Hubbard was appointed to represent him and came to the jail at about 3:30 p.m. on the 29th of September. After defendant told Mr. Hubbard some of the things that had taken place on the 27th of September 1972, Mr. Hubbard advised him that it would be to his best interest to make a statement to the police. On the same day, in the presence of his court-appointed attorney and police officers, he made a statement concerning the events which occurred on the 27th of September. He admitted that he was driv-

ing the Mercury on 27 September 1972. He also admitted his part in the breaking and entering, and larceny which occurred in Durham County, but averred that an unnamed third person shot Patrolman Wright from the Mercury automobile. Later in the day he directed officers to the place where the stolen property was recovered. Thereafter, at his lawyer's request he wrote down the names of James Dennis Mack and Levy Lowe on a piece of paper and gave it to Mr. Hubbard. He instructed Mr. Hubbard not to give the information to anyone else. He made no statement to the police officers prior to being advised to do so by Mr. Hubbard, except to answer that he did not own the Mercury automobile.

Mr. Charles Hubbard then testified that he was a practicing attorney and had been practicing law in Roxboro since 1966. He was a member of the firm of Ramsey, Jackson and Hubbard. Mr. Ramsey was the Speaker-Elect of the North Carolina House of Representatives and Mr. Jackson was Mayor of Roxboro. Mr. Hubbard was notified that he had been appointed to represent James Henry Sneed on 29 September 1972. He went to the Municipal Hall and saw Sneed at about 1:30 p.m. on that day. He had previously represented Sneed as a privately retained counsel, and Sneed recognized him on that day. Defendant at that time told him that he was in the Rougemont area of Durham County for the purpose of seeing a girl, and as he was going down a rural road he saw four men emerging from a trailer carrying a TV and other items. One of the men stopped him by pointing a gun. The men entered his Mercury automobile and ordered him to drive into Person County. He thought that one of the men was "Big Boy" Mangum. He was stopped by an officer in Person County and one of the men in the back seat suddenly shot the officer. Sneed said that the only statement he had made to the officers was that he (Sneed) did own the 1956 Mercury. Mr. Hubbard further testified that he then advised Sneed to talk to the police because he was the only person in custody and that the statement would aid in his defense. He thought that the only way to apprehend the other persons was to acquaint the authorities with Sneed's statement. Later in the day, after expressing concern that someone else might be "taking off," Sneed wrote the names of James Dennis Mack and Levy Lowe on a yellow pad and told Mr. Hubbard to "get these men arrested." Mr. Hubbard specifically denied that Sneed told him not to divulge this information or that he told Sneed

that he would later decide what to do with it. He thought it to be to his client's advantage to pinpoint the killer.

Mr. Hubbard said that he knew Patrolman Wright and that they were friends. He knew of the public concern about Patrolman Wright's killing, but he did not feel that he would be adversely affected because he represented Sneed. He did not advise his client on the premise that it would or would not adversely affect him as a lawyer or an individual, but his advice was given solely on the premise that it would be helpful to his client.

Two statements made by defendant to officers were introduced. In both statements, defendant stated that someone else did the shooting without any prior knowledge on his part. In the first statement, he did not identify the person who fired the shots. In the second statement he placed Lowe and Mack in the Mercury automobile under such circumstances that one of them must have done the shooting. He refused to say which of the two actually fired the shots.

At the conclusion of the *voir dire* hearing, Judge McKinnon, stated that he would find the facts as stipulated and as testified to by Mr. Hubbard. He then ruled that Mr. Hubbard's actions did not prevent the use of the testimony of the witnesses Lowe and Mack.

The jury returned to the courtroom and Levy Lowe and James Dennis Mack gave testimony which in essence disclosed that they joined defendant on the morning of 27 September 1972, and traveled in his Mercury automobile to a trailer in the Rougemont area of Durham County. Sneed had a pistol at that time. They broke into a trailer and took a TV, a stereo, a shotgun and other personal property. They placed the stolen property into the back seat of the car and proceeded into Person County where they met a brown unmarked patrol car. Thereafter the patrol car returned and by the use of the siren, the driver signaled them to stop. Sneed stopped the automobile, and as the patrolman approached the Mercury automobile, he suddenly and without warning shot the patrolman four times. They left the scene, and Lowe and Mack left the automobile as soon as they could.

The State offered additional evidence which tended to show that the Mercury automobile was later found camouflaged by

bushes in Orange County. Fingerprints were lifted from the automobile and Mr. Stephen R. Jones, who was qualified as an expert in fingerprint identification, testified that in his opinion some of the prints taken from defendant while he was in custody in Roxboro were identical to those lifted from the Mercury automobile.

There was medical evidence showing that Patrolman Wright's death was caused by a massive hemorrhage resulting from bullet wounds. The State also offered several other witnesses whose testimony tended to corroborate its principal witnesses.

Defendant offered no evidence.

The jury returned a verdict of guilty of first degree murder. Defendant appealed from judgment sentencing him to life imprisonment.

*Attorney General Robert Morgan by Assistant Attorney General William W. Melvin and Assistant Attorney General William B. Ray for the State.*

*Clayton and Ballance by Frank W. Ballance, Jr., for defendant appellant.*

BRANCH, Justice.

The sole question presented by this appeal is whether defendant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the Constitution of North Carolina.

Defendant contends that the testimony of State's witnesses Levy Lowe and James Dennis Mack and certain other related evidence offered by the State became available solely through statements procured from defendant as a result of Constitutionally inadequate representation by his court-appointed counsel. Defendant contends this testimony and other related evidence was, therefore, inadmissible.

The right to assistance of counsel is guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Sections 19 and 23 of the Constitution of North Carolina. The Sixth Amendment guarantee is made applicable to the states by the Fourteenth Amendment to the Federal Con-

stitution. *Avery v. Alabama,* 308 U.S. 444, 84 L.Ed. 377. This right is not intended to be an empty formality but is intended to guarantee effective assistance of counsel. *Powell v. Alabama,* 287 U.S. 45, 77 L.Ed. 158; *State v. Speller,* 230 N.C. 345, 53 S.E. 2d 294.

The case before us is unusual in that it arises on the trial judge's ruling on an objection to the admission of evidence. Our research discloses that the majority of the decisions relating to the alleged failure of counsel to render effective representation arises out of post-conviction proceedings. Nevertheless, we see no distinction in the application of the rules of law solely because of the manner in which the question is presented.

[1] Neither the United States Supreme Court, nor this Court, has fashioned a rule to guide us in determining whether an accused was denied his Constitutional right to effective assistance of counsel due to counsel's negligence, incompetency, conflicting loyalties or other similar reasons. However, there are numerous decisions from other jurisdictions and other federal courts which bear upon decision of the question here presented. A review of these decisions indicates the general rule to be that the incompetency (or one of its many synonyms) of counsel for the defendant in a criminal prosecution is not a Constitutional denial of his right to effective counsel unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice. *Snead v. Smyth,* 273 F. 2d 838; *Doss v. State of North Carolina,* 252 F. Supp. 298; *Edgerton v. State of North Carolina,* 230 F. Supp. 264; *DuBoise v. State of North Carolina,* 225 F. Supp. 51; *Jones v. Balkcom,* 210 Ga. 262, 79 S.E. 2d 1, cert. den. 347 U.S. 956, 98 L.Ed. 1101; See Annot., 74 A.L.R. 2d 1390 (1960), Conviction—Incompetency of Counsel.

[2, 3] Consistent with the above stated general rule, it has been held that the question of Constitutional inadequacy of representation cannot be determined solely upon the amount of time counsel spends with the accused or upon the intensiveness of his investigation. *O'Neal v. Smith,* 431 F. 2d 646; *Vizcarra-Delgadillo v. United States,* 395 F. 2d 70; *United States ex rel. Hardy v. McMann,* 292 F. Supp. 191. Neither does the Sixth Amendment guarantee the best available counsel, errorless counsel, or satisfactory results for the accused. *United States ex rel. Weber v. Ragen,* 176 F. 2d 579; *Palmer v. Adams,* 162 Conn.

316, 294 A. 2d 297; *Kinney v. United States,* 177 F. 2d 895. Nevertheless, counsel cannot assume the role of *amicus curiae, Ellis v. United States,* 356 U.S. 674, 2 L.Ed. 2d 1060, but must function in the active role of an advocate. *Entsminger v. Iowa,* 386 U.S. 748, 18 L.Ed. 2d 501. Nor can counsel be hobbled by divided loyalties. *People v. Stoval,* 40 Ill. 2d 109, 239 N.E. 2d 441; *State v. Crockett,* 419 S.W. 2d 22 (Mo. 1967).

[4] The Courts rarely grant relief on the grounds here asserted, and have consistently required a stringent standard of proof on the question of whether an accused has been denied Constitutionally effective representation. We think such a standard is necessary, since every practicing attorney knows that a "hindsight" combing of a criminal record will in nearly every case reveal some possible error in judgment or disclose at least one trial tactic more attractive than those employed at trial. To impose a less stringent rule would be to encourage convicted defendants to assert frivolous claims which could result in unwarranted trial of their counsels. In *Diggs v. Welch,* 148 F. 2d 667, Arnold, J., aptly stated: "The opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner."

[5] It is evident that there can be no precise or "yardstick" approach in applying the recognized rules of law in this area. Thus, each case must be approached upon an *ad hoc* basis, viewing circumstances as a whole, in order to determine whether an accused has been deprived of effective assistance of counsel. *Walker v. Caldwell,* 476 F. 2d 213; *Hegwood v. Swenson,* 344 F. Supp. 226; *Timmons v. Peyton,* 240 F. Supp. 749 (Reversed on other grounds 360 F. 2d 327) ; *Palmer v. Adams, supra.*

[6] In instant case, the Clerk of Superior Court appointed Mr. Charles Hubbard, a member of a respected law firm who had been engaged in the practice of criminal law for a period of approximately six years, to represent defendant. We note that Mr. Hubbard had previously represented defendant in a criminal matter as his privately retained counsel. Upon notification of his appointment, Mr. Hubbard promptly interviewed defendant. At that time defendant related facts to him which, if true, could have been an absolute defense to the homicide charge. The gist of defendant's statement was that another person or persons forced him at gunpoint to carry them into Person County, and there without any complicity on the part of defendant, shot and killed Patrolman Joe Wright.

Defendant takes the anomalous position that although he told his attorney a falsehood, his attorney should have known better than to believe him. We think that the attorney-client relationship is such that when a client gives his attorney facts constituting a defense, the attorney may rely on the statement given unless it is patently false. Therefore, under the circumstances of this case, it was reasonable for Mr. Hubbard to believe that someone other than defendant perpetrated the murder, and that unless these persons were apprehended they would flee. Based on these beliefs, Mr. Hubbard advised his client to inform the authorities of the true facts and thereby possibly clear himself of the murder charge. Under these circumstances, we cannot say that his advice was improper.

[7] In retrospect, it might appear to have been the better course for counsel to have advised his client to make no statement to the authorities until counsel had made a more intensive investigation. Conceding, *arguendo,* that counsel should have pursued this alternative action, his failure to do so does not amount to such abdication of duty as to deny defendant the Constitutionally guaranteed right to effective assistance of counsel. This record does not support defendant's contentions that his appointed counsel acted in the capacity of *amicus curiae* or that counsel was fettered by divided loyalties. The evidence of record reveals that the relationship between counsel and the deceased patrolman was no more than that of casual acquaintances. Further, we find no evidence of divided loyalty in the fact that Mr. Hubbard was a member of a firm which included the Speaker-Elect of the North Carolina House of Representatives and the Mayor of the Town of Roxboro. This association would seem to attest to his ability and character rather than to indicate a tendency to shirk his duty to his client because of aroused community resentment.

It is the duty of the trial judge and the prosecutor to see that the essential rights of an accused are preserved. *Glasser v. United States,* 315 U.S. 60, 86 L.Ed. 680; *Mooney v. Holohan,* 294 U.S. 103, 79 L.Ed. 791.

In *United States v. Handy,* 203 F. 2d 407, the Court, considering the circumstances requiring intervention of the Judge because of ineffective assistance of counsel, stated:

"In the absence of such gross incompetence or faithlessness of counsel as should be apparent to the trial judge

and thus call for action by him it would be destructive of the relationship of counsel and client as we know it either to permit the trial judge to dictate to counsel his trial strategy in defending his client's interests or to permit the defendant after conviction to question that strategy and in effect to put his counsel on trial with respect to it. . . . "

Here the acts allegedly resulting in ineffective representation at trial by defendant's counsel did not occur in the presence of the Court. However, at trial the fair and learned trial judge conducted an extensive *voir dire* hearing concerning the admissibility of the challenged evidence, including testimony from defendant and appointed counsel. His ruling admitting this evidence, in effect, amounted to a finding by the Court that Mr. Hubbard's actions did not require intervention of the Judge or other officers of the Court.

We hold, under the circumstances of this case, that defendant James Henry Sneed was not denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the Constitution of North Carolina.

Defendant offers no authority or argument to support his other assignments of error and we deem them to be abandoned. Rule 28, Rules of Practice in the Supreme Court; *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789; *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526; 1 Strong, N. C. Index 2d, Appeal and Error, § 45.

In the trial of the case below, we find

No error.