IN THE MATTER OF: JONATHON MATTHEW CLAPP

No. COA99-290

(Filed 21 March 2000)

## 1. Appeal and Error— appealability—delinquency adjudication—sufficiency of evidence—no motion for dismissal at trial

A juvenile adjudicated delinquent for a sexual offense was precluded from raising the issue of whether there was sufficient evidence of force where he failed to move for a dismissal at the close of the evidence.

## 2. Witnesses— child—competency—other evidence

The trial court did not abuse its discretion by admitting the testimony of a four-year-old sexual assault victim where, even if she had been declared incompetent to testify, her statements to her mother and doctor could have been admitted under established exceptions to the hearsay rule and there was testimony from another witness sufficient to show that the juvenile used force to commit a sexual act. A careful review of the record reveals overwhelming evidence supporting the finding that the juvenile was delinquent.

## 3. Juveniles— disposition order—sufficiency of information

The juvenile court did not err in making a dispositional order where the juvenile contended that the court had insufficient social, medical, psychiatric, psychological, and educational information regarding the juvenile under N.C.G.S. § 7A-639 and the State contended that there is no statutorily required information which the court must receive before disposition. The juvenile court is required to select the least restrictive alternative, taking into account certain factors. In this case, the court reviewed the juvenile's file and the information presented by the parties, the prosecutor, the court counselor, and the juvenile's attorney and determined that placing the juvenile on probation for one year and requiring him to complete a sex offender evaluation and any recommended treatment would be in the juvenile's best interest and meet the needs of the State.

**IN RE CLAPP**

[137 N.C. App. 14 (2000)]

### 4. Constitutional Law— effective assistance of counsel— juvenile delinquency—failure to move to dismiss

A juvenile adjudicated delinquent did not receive ineffective assistance of counsel where his attorney did not move for dismissal at the close of the State's evidence based upon insufficient evidence of force accompanying the alleged sexual offense. The attorney was experienced in juvenile court, argued vigorously that the juvenile had consistently denied committing the offense, asked for judgment in the juvenile's favor, and, even assuming that she should have moved to dismiss the petition, there was no prejudice because sufficient evidence of force was presented.

### 5. Constitutional Law— effective assistance of counsel—juvenile delinquency—failure to move to disqualify witnesses

A juvenile adjudicated delinquent did not receive ineffective assistance of counsel where the attorney did not move to disqualify two juvenile witnesses. The attorney had interviewed the witnesses and could have determined that the court would find them competent, with the overruling of an objection enhancing their credibility; moreover, their statements to their mothers and a doctor could have been admitted under exceptions to the hearsay rule even if they had been declared incompetent.

### 6. Constitutional Law— effective assistance of counsel— juvenile delinquency—failure to move for continuance

A juvenile adjudicated delinquent did not have ineffective assistance of counsel where his dispositional counsel did not move for a continuance on the grounds that the court had not received sufficient social, medical, psychiatric, psychological and educational information. The record reveals that the dispositional attorney had previously requested and received two continuances in order to secure the presence of the juvenile, the dispositional attorney filed a notice of appeal and a motion for appropriate relief seeking a new adjudicatory hearing on the basis that the juvenile was denied effective assistance of counsel during the adjudication, and the court held a hearing on the motion at which the dispositional attorney argued vigorously that the juvenile was denied effective assistance of counsel during the adjudication.

Judge GREENE concurring in the result.

Appeal by respondent juvenile from judgments entered 25 November 1997 by Judge Lawrence C. McSwain and 6 April 1998 by

IN RE CLAPP

[137 N.C. App. 14 (2000)]

Judge Charles L. White in Guilford County District Court. Heard in the Court of Appeals 7 December 1999.

*Smith Helms Mulliss & Moore, L.L.P., by Amie Flowers Carmack, for respondent-appellant Jonathon Matthew Clapp.*

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth J. Weese, for the State.*

WALKER, Judge.

On 25 November 1997, Jonathon Matthew Clapp (the juvenile) was adjudicated to be delinquent for committing a second degree sexual offense. After a dispositional hearing, the juvenile was placed on probation for 12 months with certain terms and conditions.

The State's evidence at the adjudicatory hearing tended to establish the following: On 28 July 1997, the juvenile, age 11, was playing at the home of M.H., age 3. The juvenile had been playing in the bedroom with M.H. and her brother, J.H., age 7, when the juvenile's mother called at approximately 5:00 p.m. and requested that he come home. Angel Delzo, M.H.'s mother, testified that as she went towards the bedroom to tell the juvenile to go home, he "came out of the bedroom really quick" with "wild" hair and "ran out the door really quick." Then, according to Ms. Delzo, M.H. "came out of the bedroom pulling at her crouch" or "pulling at her panties." M.H. stated that the juvenile "made her take her clothes off" and "was licking her privates." Ms. Delzo further testified that M.H. was referring to her vagina as her "privates."

Ms. Delzo called the juvenile's mother and asked her to bring the juvenile back to her house. Ms. Delzo testified that after the juvenile arrived with his mother, she asked him why he did it and he responded that he did not know. When the juvenile's mother asked him the same question, he stated that he had spent the night with a friend, who had him watch Playboy, and he learned this from the Playboy channel. Ms. Delzo called the police, and Detective Delores Jackson responded to the call that day and interviewed Ms. Delzo, J.H., and M.H. at the hospital. The following day, Detective Jackson interviewed the juvenile in the presence of his parents.

At the adjudicatory hearing, after being sworn individually, M.H., who was then age 4, testified that she had been playing in her bedroom with J.H. and the juvenile, when the juvenile told her to take off all of her clothes. She further testified that after she took off her

IN RE CLAPP

[137 N.C. App. 14 (2000)]

clothes, the juvenile started "licking my privates" with "his tongue." M.H. then explained that her "private parts" are between her legs. After pointing to her "belly button," M.H. testified that her belly button is not her "private parts."

J.H. testified that he, M.H., and the juvenile were in the bedroom when the juvenile "told [M.H.] to get in the closet and take off her clothes" and then "asked her to get on the bed." The juvenile then, according to J.H., started "licking her privates," the area "between your legs." J.H. testified that, during this time, the juvenile "was holding her down" with his "hands on [her] arms" and "his feet on her legs." J.H. further testified that the juvenile threatened to hit him if he did not participate, after which J.H. pretended to lick M.H.

John Robert White, a neighbor, testified that he had a conversation with the juvenile on 28 July 1997, while waiting for the police to arrive and that the juvenile admitted that he had kissed M.H. and that "he had her take her clothes off." Mr. White further testified that the juvenile admitted that he knew it was wrong to do this.

Detective Jackson testified that she interviewed M.H. at the hospital. M.H. informed her that the juvenile had licked her private parts while they were playing in the bedroom that day. M.H. further explained to Detective Jackson that they had been playing a game where she was pretending to be the wife of J.H. and of the juvenile and that at one point during the incident, she had taken off her dress and her panties. Additionally, Detective Jackson was permitted to testify for corroborative purposes that M.H. informed her examining doctor that the juvenile had licked her private parts.

Detective Jackson further testified that the juvenile gave her a statement, admitting that he "started talking to [J.H.] about sex" and was "telling [him] about how a man and a woman get naked and kiss and have sex." The juvenile also admitted that he had kissed M.H. on the belly button while she was laying on the bed and that at this time, M.H. had her dress on but not her panties. The juvenile informed Detective Jackson that he then went in the closet with M.H. and kissed her on the cheek. He and M.H. then came out of the closet, at which time M.H. took off her dress so she could put on another dress and she was naked because she could not find her panties.

The juvenile testified that on this occasion he had kissed M.H. on the belly button and on the cheek. He denied asking M.H. to take her clothes off and denied touching her private parts.

After hearing the evidence and the arguments of counsel, the juvenile court found facts which were proven beyond a reasonable doubt, including the following:

6. That on that occasion the children were playing in a bedroom; that [M.H.] ended up with her panties being removed; that she stated that the juvenile respondent licked her private parts, indicating that her private parts [were] between her legs.

7. That the juvenile respondent indicated that he did kiss the victim in this case on the cheek and on the belly button; that she had on no panties at one time; that he found her panties and gave them back to her and that the kissing and the contact between the victim and the juvenile respondent was initiated and brought about as a result of the 7 year old brother [J.H.] suggesting that they should kiss the victim.

8. That the victim in this case told her mother that the juvenile respondent licked her private parts and told the same story consistently to include here in the courtroom this day.

9. That the juvenile respondent indicated that after he left the home where the victim was, and he heard the phone ring in his house, that he thought it might be the victim's mother calling and when asked why he thought it might be the victim's mother calling, he said he did not know.

Based on these findings, the juvenile court concluded that the juvenile is delinquent, as defined by N.C. Gen. Stat. § 7A-517(12) (repealed effective 1 July 1999), for having committed a second degree sexual offense in violation of N.C. Gen. Stat. § 14-27.5, and is in need of the protective supervision of the court.

The dispositional hearing was held on 6 April 1998, and the juvenile was represented by a different attorney. The juvenile court, after reviewing the juvenile's file and information presented by the parties, the prosecutor, the court counselor, and the juvenile's attorney, placed the juvenile on probation for 12 months with certain terms and conditions, including the requirement that he obtain a sex offender assessment and complete any course of treatment that is recommended based on that evaluation.

The juvenile sets forth the following assignments of error: (1) the juvenile court erred in adjudicating him delinquent since there was insufficient evidence of the element of force; (2) the juvenile court

erred in admitting the testimony of four-year-old M.H. since she was incompetent to testify; (3) the juvenile court did not have sufficient social, medical, psychiatric, psychological, and educational information regarding the juvenile to make its dispositional order; and (4) the juvenile's attorneys provided ineffective assistance of counsel at both the adjudicatory and dispositional hearings.

**[1]** The juvenile first contends that the juvenile court erred in adjudicating him delinquent since there was insufficient evidence of force. The State counters that the juvenile is precluded from raising this issue on appeal since he did not move to dismiss the petition at the close of the evidence during the adjudicatory hearing. This Court, in *In re Davis*, 126 N.C. App. 64, 483 S.E.2d 440 (1997), found that the respondent juveniles were precluded from challenging the sufficiency of the evidence presented during a juvenile delinquency proceeding since they failed to move for a dismissal of the petitions at trial pursuant to N.C.R. App. 10(b)(3). *See also State v. Spaugh*, 321 N.C. 550, 364 S.E.2d 368 (1988). Here, since the juvenile failed to move for a dismissal at the close of the evidence, he is precluded from raising this issue on appeal.

**[2]** The juvenile next assigns that the juvenile court committed plain error in admitting M.H.'s testimony since she was only four-years-old and was incompetent to testify. Specifically, the juvenile argues that M.H. did not clearly communicate her understanding of the obligation to tell the truth or illustrate that she had the capacity to understand and relate facts since she provided inaudible responses to questions.

The general rule is that every person is competent to be a witness unless the trial court determines that he or she is disqualified under the Rules of Evidence. *Spaugh*, 321 N.C. 550, 364 S.E.2d 368 (1988). Rule 601(b) provides: "A person is disqualified to testify as a witness when the court determines that he is . . . (1) incapable of expressing himself concerning the matter as to be understood . . ., or (2) incapable of understanding the duty of a witness to tell the truth." N.C. Gen. Stat. § 8C-1, Rule 601(b) (Cum. Supp. 1998). The issue of competency of a witness rests in the sound discretion of the trial court based upon its observation of the witness. *State v. Hicks*, 319 N.C. 84, 89, 352 S.E.2d 424, 426 (1987). A decision will not be disturbed on appeal unless there is a showing that the trial court's ruling as to competency could not have been the result of a reasoned decision. *Id.* This Court, in *In re Arthur*, 27 N.C. App. 227, 218 S.E.2d 869 (1975), *reversed on other grounds*, 291 N.C. 640, 231 S.E.2d 614 (1977),

emphasized that "[j]uvenile proceedings are designed to foster individualized disposition of juvenile offenders under the protection of the courts and are something less than a full blown determination of criminality."

Here, before M.H. was sworn individually, the juvenile court asked the following of her:

> THE COURT: And so I want you to stand up beside the table. I know that's going to keep you about the same height. Now I'm going to need you to put your hand on the [B]ible, and you're going to have to promise to do some things for us. . . . Now listen to this lady, and I want you to give me an answer based on what you hear her say. Okay?

The Clerk then asked M.H. the following:

> Do you promise that you will tell the truth, the whole truth and nothing but the truth, so help you God?

M.H. answered "yes" and then testified that she had been playing in her bedroom with J.H. and the juvenile, when the juvenile told her to take off all of her clothes. She further testified that after she took off her clothes, the juvenile licked her private parts. M.H.'s testimony was corroborated by the testimony of her mother, her brother J.H., and Detective Jackson. Furthermore, the trial court found that M.H. had "told her mother that the juvenile respondent licked her private parts and told the same story consistently to include here in the courtroom this day." Thus, we cannot find that the trial court abused its discretion in finding M.H. competent to testify based upon its observation of her testimony.

The juvenile judge, as the trier of fact in these proceedings, has the duty to ensure that a finding of delinquency is based on competent evidence. However, even if M.H. had been declared incompetent to testify, and thus unavailable, her statements to her mother and her doctor could have been admitted as substantive evidence under the established exceptions to the hearsay rule which are set forth in N.C. Gen. Stat. § 8C-1, Rule 803(2) for excited utterances and Rule 803(4), the medical diagnosis and treatment exception (Cum. Supp. 1998). *See State v. Ward*, 118 N.C. App. 389, 455 S.E.2d 666 (1995). If M.H. were unavailable, the hearsay testimony of M.H.'s mother and doctor would have been both necessary and inherently trustworthy under these "firmly rooted" hearsay exceptions, such that the constitutional requirements of the confrontation clause would have been satisfied.

*See State v. Rogers,* 109 N.C. App. 491, 428 S.E.2d 220, *disc. review denied,* 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied, Rogers v. N.C.,* 511 U.S. 1008, 128 L. Ed. 2d 54 (1994).

In *State v. Smith,* 315 N.C. 76, 337 S.E.2d 833 (1985), our Supreme Court found that the child's statements to her grandmother regarding the alleged sexual abuse was admissible substantively under Rule 803(2) as an excited utterance since the child voluntarily made the statements between two and three days after the abuse occurred. Here, M.H.'s statements to her mother were made immediately after the juvenile left the house. There was also evidence that later the same day, M.H. and her mother informed M.H.'s examining doctor that the juvenile had licked her private parts. Therefore, if M.H. were unavailable to testify, her statements to her mother and her doctor could have been admitted as substantive evidence under the excited utterance exception.

In the recent case of *State v. Hinnant,* 351 N.C. 277, 523 S.E.2d 663 (2000), our Supreme Court held that two inquiries must be satisfied for hearsay evidence to be admissible under Rule 803(4), the medical diagnosis and treatment exception:

> First, the trial court must determine that the declarant intended to make the statements at issue in order to obtain medical diagnosis or treatment. The trial court may consider all objective circumstances of record in determining whether the declarant possessed the requisite intent. Second, the trial court must determine that the declarant's statements were reasonably pertinent to medical diagnosis or treatment.

The Court, in *Hinnant,* found that there was insufficient evidence regarding the child's motive in making the statements to a psychologist or that the child understood that the psychologist was conducting the interview in order to provide medical diagnosis or treatment since the interview occurred approximately two weeks after the child's initial medical examination and was not conducted in a "medical environment." *Id.* We find that the present case is distinguishable from *Hinnant.* Here, according to Ms. Delzo, M.H. "came out of the bedroom pulling at her crouch" or "pulling at her panties" and stated that the juvenile had made her take off her clothes and licked her private parts. Later that same day, Ms. Delzo took M.H. to the hospital emergency room, where M.H. and her mother informed the examining doctor that the juvenile had licked M.H.'s private parts. Therefore, if M.H. had been unavailable to testify, the trial court could have found

that M.H.'s statements to her mother and her doctor would have been admissible through the doctor's testimony under the medical diagnosis and treatment exception.

Furthermore, even assuming the juvenile court erred in failing to find M.H. incompetent, and thus unavailable, we conclude that J.H.'s testimony was sufficient to show that the juvenile used force on M.H. to commit a sexual act, and thus to sustain the finding of delinquency. Therefore, a careful review of the record reveals that there was overwhelming evidence to support the juvenile court's finding that the juvenile was delinquent for having committed a second degree sexual offense.

[3] The juvenile also argues that the juvenile court erred in making its dispositional order since it had insufficient social, medical, psychiatric, psychological, and educational information regarding the juvenile. N.C. Gen. Stat. § 7A-639 (1995) provides that the "judge shall proceed to the dispositional hearing upon receipt of sufficient social, medical, psychiatric, psychological, and educational information. . . ." (Repealed effective 1 July 1999). The State contends, however, that the juvenile's reliance on the statute is misplaced and that there is no "statutorily required information" which a court must receive before proceeding to disposition. Further, the State argues that the juvenile court did not have this information because the juvenile and his parents refused to participate in any assessments with the court counselor either before or after the adjudicatory hearing.

The purpose of the juvenile code is to avoid commitment of the juvenile to training school if he could be helped through community-level resources. *In re Hughes*, 50 N.C. App. 258, 273 S.E.2d 324 (1981). Thus, in selecting among dispositional alternatives, the juvenile court is required to select the least restrictive disposition, taking into account the seriousness of the offense, degree of culpability, age, prior record, and circumstances of the particular case. *In re Bullabough*, 89 N.C. App. 171, 365 S.E.2d 642 (1988). The juvenile judge must also weigh the State's best interest and select a disposition consistent with public safety. *Id.*

Here, although the court counselor had "not had the opportunity to do an investigation, nor to meet with the family nor [the juvenile]," he recommended that the juvenile be required to complete a specific sex offender evaluation as the "first step of the process" because of the "nature of the offense." The juvenile court, after reviewing the juvenile's file and information presented by the parties, the prosecu-

tor, the court counselor, and the juvenile's attorney, determined that placing the juvenile on probation for one year and requiring him to complete a sex offender evaluation and any subsequent treatment recommended based upon that evaluation, would be in the juvenile's best interest and meet the objectives of the State. Thus, the juvenile court did not err in making its dispositional order.

[4] The juvenile next contends that his attorneys at the adjudicatory and dispositional hearings provided ineffective assistance of counsel. "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-562, 324 S.E.2d 241, 248 (1985), *citing Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). Defendant must satisfy a two-part test by showing (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Id.* "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Braswell*, 312 N.C. at 563, 324 S.E.2d at 248 (1985), *citing Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). "Trial counsel [are] necessarily given wide latitude in these matters." *State v. Lowery*, 318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986). "Ineffective assistance of counsel claims are not intended to promote judicial second-guessing on questions of strategy as basic as the handling of a witness." *Id.* In *State v. Sneed*, 284 N.C. 606, 613, 201 S.E.2d 867, 871-872 (1974), our Supreme Court stated that courts rarely grant relief on these grounds and have "consistently required a stringent standard of proof" to show ineffective assistance of counsel. The Supreme Court then explained that:

> . . . such a standard is necessary, since every practicing attorney knows that a 'hindsight' combing of a criminal record will in nearly every case reveal some possible error in judgment or disclose at least one trial tactic more attractive than those employed at trial.

*Id.* To impose a less stringent rule would encourage frivolous claims. *Id.*

Here, the juvenile first contends that his attorney at the adjudicatory hearing was ineffective since she failed to move for a dismissal at the close of the State's evidence when there was insufficient evidence of force. Although the juvenile's attorney did not move for a

dismissal, the record reveals that she argued vigorously during her closing argument that the juvenile had consistently denied committing the second degree sexual offense and asked the juvenile court to render judgment in his favor. Furthermore, the juvenile's attorney is obviously experienced in juvenile delinquency proceedings since she stated to the juvenile court during her closing argument that "this has been the toughest case I've had so far, and I'm in here almost every other day." Additionally, after the dispositional hearing, the juvenile court held a hearing on the juvenile's motion for appropriate relief, which alleged that the juvenile was denied effective assistance of counsel during the adjudication. After hearing the testimony of the juvenile, his mother, and the adjudicatory attorney, the juvenile court made extensive findings and concluded that the juvenile had failed to meet his burden of showing ineffective assistance of counsel and thus denied his motion for appropriate relief.

Thus, even assuming *arguendo* that the juvenile's attorney should have moved to dismiss the petition for insufficient evidence of force, we conclude that this omission did not prejudice the juvenile's defense since sufficient evidence of force was presented during the hearing. Pursuant to N.C. Gen. Stat. § 14-27.5, a person who engages in a sexual act with another person "by force and against the will of the other person," is guilty of a second degree sexual offense. *State v. Britt*, 80 N.C. App. 147, 341 S.E.2d 51, *disc. review denied*, 317 N.C. 337, 346 S.E.2d 141 (1986). The statutory requirement that the act be committed by force and against the will of the victim "may be established by either actual, physical force or by constructive force in the form of fear, fright, or coercion." *State v. Etheridge*, 319 N.C. 34, 45, 352 S.E.2d 673, 680 (1987). "Fear of serious bodily harm reasonably engendered by threats or other actions of a defendant and which causes the victim to consent, takes the place of force and negates consent." *Britt*, 80 N.C. App. at 148, 341 S.E.2d at 51. "Physical force" means force applied to the body. *State v. Scott*, 323 N.C. 350, 354, 372 S.E.2d 572, 575 (1988).

Here, M.H. testified that the juvenile told her to take off all of her clothes. J.H. testified that the juvenile told M.H. to get in the closet, to take off her clothes, and then to get on the bed where he started licking her private parts. J.H. further testified that the juvenile was holding M.H. down on the bed with his hands on her arms and his feet on her legs. In addition, the juvenile court was in a position to observe the size, strength, maturity, demeanor, and conceptual awareness of the juvenile as compared to M.H. in determining

whether there was sufficient evidence of force, either actual or constructive. Furthermore, even if M.H. and J.H. had been found incompetent to testify and thus, unavailable, Ms. Delzo testified that M.H. came out of the bedroom and told her that the juvenile made her take off her clothes and licked her private parts. *See State v. Easterling*, 119 N.C. App. 22, 42-43, 457 S.E.2d 913, 925, *disc. review denied*, 341 N.C. 422, 461 S.E.2d 762 (1995). This evidence of force, when viewed in the light most favorable to the State, was sufficient to withstand a motion to dismiss. Therefore, we conclude that the juvenile has failed to meet the "stringent" standard of proof required to show a reasonable probability that, but for counsel's omission, there would have been a different result.

[5] The juvenile also argues that his adjudicatory attorney rendered ineffective assistance when she failed to move to disqualify M.H. and J.H. on the ground that they were incompetent to testify. However, the juvenile's attorney interviewed both M.H. and J.H. approximately one week prior to the adjudicatory hearing and could have determined that the juvenile court would find M.H. and J.H. competent to testify. Thus, an objection to their competency, if overruled by the juvenile court, could only enhance their credibility. Additionally, as previously noted, even if M.H. had been declared incompetent to testify, her statements to her mother and her doctor could have been admitted as substantive evidence under the exceptions to the hearsay rule as set forth in Rule 803(2) for excited utterances and Rule 803(4), the medical diagnosis and treatment exception. J.H.'s statements to his mother could have also been admitted under the excited utterance exception if he had been found incompetent to testify. Therefore, we conclude that any failure to qualify M.H. or J.H. was harmless given the likelihood that their statements would have been admitted as substantive evidence.

[6] The juvenile next contends that his attorney at the dispositional hearing rendered ineffective assistance since he failed to move for a continuance on the grounds that the court had not received sufficient social, medical, psychiatric, psychological and educational information pursuant to N.C. Gen. Stat. § 7A-639. The State argues that the juvenile court did not have this information because the juvenile and his parents refused, either before or after the adjudication, to participate in any assessments with the court counselor.

The record reveals that the dispositional attorney had previously requested and received two continuances in order to secure the pres-

**IN RE CLAPP**

[137 N.C. App. 14 (2000)]

ence of the juvenile since the juvenile was attending school out of state. Additionally, after the dispositional hearing, the dispositional attorney filed a notice of appeal and a motion for appropriate relief seeking a new adjudicatory hearing on the basis that the juvenile was denied effective assistance of counsel during the adjudication. The juvenile court held a hearing on the juvenile's motion during which the dispositional attorney presented evidence and argued vigorously that the juvenile was denied effective assistance of counsel during the adjudication. Thus, after a careful review, we find that the juvenile has failed to meet his burden of proving that his dispositional attorney's performance fell below an objective standard of reasonableness and that the defense was prejudiced by his attorney's alleged deficient performance.

We have reviewed the juvenile's remaining assignments of error and find them to be without merit.

Affirmed.

Judge TIMMONS-GOODSON concurs.

Judge GREENE concurs in the result with separate opinion.

Judge GREENE concurring in the result.

I do not agree with the majority that, had M.H. been found incompetent to testify, "M.H.'s statements to her mother and her doctor would have been admissible through the doctor's testimony under the medical diagnosis and treatment exception." The record shows that M.H.'s doctor did not testify in this case. This Court cannot, when reviewing a case, make assumptions regarding evidence one of the parties *would have* offered during the trial below when that party did not, in fact, offer the evidence. We must therefore assume, when considering the juvenile's claim for ineffective assistance of counsel, that M.H. would have been found incompetent to testify, and the only evidence regarding M.H.'s statements came from Ms. Delzo's testimony.

Defendant argues he received ineffective assistance of counsel because his attorney failed to make a motion to dismiss for insufficient evidence of force, which is an element of second-degree sexual offense. N.C.G.S. § 14-27.5 (1999).

"To defeat a motion to dismiss on insufficiency of the evidence, there must be substantial evidence to establish each essential ele-

ment of the crime charged." *State v. Jordan*, 321 N.C. 714, 717, 365 S.E.2d 617, 619 (1988). "Substantial evidence 'must be existing and real,' and is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Irwin*, 304 N.C. 93, 98, 282 S.E.2d 439, 443 (1981)).

In this case, Ms. Delzo testified M.H. told her the juvenile "made her take her clothes off" and "was licking her privates." At the time of the incident, M.H. was three years old and the juvenile was twelve years old. A reasonable person could find, based on M.H.'s statement's to her mother as well as M.H.'s age in relation to the age of the juvenile, that the juvenile used force against M.H. The evidence of force, therefore, was sufficient to withstand a motion to dismiss for insufficiency of evidence. Accordingly, I agree with the majority that failure of the juvenile's attorney to make a motion to dismiss did not prejudice the juvenile's defense, and the juvenile consequently did not receive ineffective assistance of counsel.