IN THE MATTER OF: M.B., Minor Child
No. COA05-432
North Carolina Court of Appeals
Filed February 7, 2006
This case not for publication
Yadkin County No. 04 J 4.
Attorney General Roy Cooper, by Assistant Attorney General Kathleen U. Baldwin, for the State.
Susan J. Hall for juvenile-appellant.
McGEE, Judge.
M.B., a juvenile, appeals from orders adjudicating M.B. delinquent, finding M.B. in violation of his probation, and placing M.B. in the custody of the Yadkin County Department of Social Services for placement in the Yadkin County Group Home. We affirm.
M.B. was adjudicated delinquent on 23 February 2004 on an underlying allegation of larceny. M.B. was placed on probation, the terms of which included remaining on good behavior and not violating any laws. While M.B. was on probation, his court counselor filed a motion for review on 28 September 2004, alleging that M.B. violated the conditions of his probation by bringing a BB gun to Yadkin Success Academy, where M.B. attended school. The police officer who received the BB gun from school officials filed a juvenile petition dated 22 September 2004 alleging M.B. to be delinquent pursuant to the alleged violation of N.C. Gen. Stat. § 14-269.2(d), a class 1 misdemeanor.
Evidence presented at the 8 November 2004 hearing tended to show that on the morning of 13 September 2004, eleven-year-old M.B. borrowed his younger brother's book bag to take to school. M.B. testified that he put his homework in the book bag and zipped up the bag without looking inside. Later that morning at school, M.B. told his teacher there was a gun in his book bag. The teacher looked in M.B.'s book bag and found what appeared to her to be a gun. The teacher escorted M.B., with his book bag, to the principal, who turned the bag over to Officer Dawn Pardue of the Yadkinville Police Department. Officer Pardue testified that the BB gun looked so much like a real gun that had M.B. pointed it at a law enforcement officer, M.B. might have been fired upon.
The BB gun belonged to M.B.'s twelve-year-old brother and had been a gift from their grandfather. M.B.'s mother testified she was not certain how the BB gun got into the book bag that M.B. was using. She assumed M.B.'s younger brother, who was only three years old, had put the gun in the book bag because the gun had previously been in a toy box that all of the children used.
The terms of M.B.'s probation included counseling sessions with a therapist and psychiatrist and participation in a community service program. M.B.'s parents were required to ensure that M.B. complied with all probation conditions. M.B. completed his community service successfully. However, between August and November of 2004, M.B. missed at least five of his counseling appointments. M.B.'s mother testified that M.B.'s father worked third shift security in Winston-Salem and was unable to take M.B. to his counseling appointments. This left the responsibility with M.B.'s mother, who cared for four young children. M.B.'s mother testified that she missed one appointment because she had to take her father-in-law to the emergency room, one appointment because her truck would not start, and a third appointment because of a mix-up in dates.
At the close of testimony, the trial court found that M.B. was guilty of having a gun at school but opined that M.B. more than likely brought the gun to school merely for attention. The trial court expressed concern that M.B. could have been harmed because the BB gun looked like a high caliber weapon. The trial court also expressed concern that M.B. was not keeping his counseling appointments. The trial court further questioned the parties, M.B.'s court counselor, and M.B.'s teacher about M.B.'s school performance, medication, behavior at home, and problems with transportation to appointments. The trial court ordered that M.B.'s probation continue and that M.B. write a letter of apology to his school principal. The trial court also ordered that M.B. be confined for two twenty-four-hour periods in a detention facility, and that M.B. apply to the Yadkin County Group Home. The court counselor recommended that M.B. be sent to a training camp, but the trial court, recognizing M.B.'s young age, decided to order placement in a group home that would allow M.B. to spend weekends with his family. M.B. was accepted into the group home, and in an order dated 13 December 2004, the trial court placed M.B. in the legal and physical custody of the Yadkin County Department of Social Services for placement in the Yadkin County Group Home for a period not to exceed one year. M.B. appeals.

I.
M.B. argues that the trial court abused its discretion in adjudicating M.B. delinquent because there was insufficient evidence to support the adjudication beyond a reasonable doubt. The State contends that M.B. did not preserve this issue for appeal because he did not make a motion to dismiss at the hearing pursuant to N.C.R. App. P. 10(b)(3). We agree. The requirement that a motion to dismiss be made to preserve the issue of sufficiency of the evidence is stated clearly in N.C.R. App. P. 10(b)(3) ("A defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action, or for judgment as in case of non suit, at trial."). This provision applies in juvenile cases, as well. Our Court held in In re Clapp, 137 N.C. App. 14, 526 S.E.2d 689 (2000), that a juvenile was precluded from challenging the sufficiency of the evidence on appeal where the juvenile failed to move for a dismissal of the petition at the adjudicatory hearing. Clapp at 19, 526 S.E.2d at 693. In the present case, M.B. failed to move for a dismissal at the end of the evidence. Accordingly, we overrule this assignment of error.

II.
M.B. next argues that the trial court abused its discretion in ordering a disposition placing M.B. in the Yadkin County Group Home. M.B. contends that the disposition violated N.C. Gen. Stat. § 7B-2506(14). M.B. further contends that instead of placing M.B. in a group home, the trial court should have held M.B.'s parents in contempt of court. We disagree.
Juvenile dispositions in delinquency proceedings are controlled by N.C. Gen. Stat. § 7B-2500 et seq. A trial court is required to "select the most appropriate disposition" for the juvenile that is designed to both "protect the public and to meet the needs and best interests of the juvenile[.]" N.C. Gen. Stat. § 7B-2501(c) (2004). A trial court's choice must be based upon:
(1) The seriousness of the offense;
(2) The need to hold the juvenile accountable;
(3) The importance of protecting the public safety;
(4) The degree of culpability indicated by the circumstances of the particular case; and
(5) The rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment.
Id.
In this case, the trial court found that M.B. committed the offense of possession of a weapon on school property. Because the weapon was a BB gun, the offense was a Class 1 misdemeanor. See N.C. Gen. Stat. § 14-269.2(d) (2004). A Class 1 misdemeanor is listed as a minor offense for purposes of calculating a juvenile disposition. N.C. Gen. Stat. § 7B-2508(a) (2004). M.B.'s delinquency history was classified as medium in that he had one prior adjudication of a Class 1 misdemeanor and was on probation at the time of the offense. See N.C. Gen. Stat. § 7B-2507(b)-(c) (2004). Given these two factors, the minor offense and the medium delinquency history, the trial court had the authority to impose either a Level 1 or Level 2 disposition. See N.C. Gen. Stat. § 7B-2508(f) (2004).
The offense of bringing a BB gun to school also constituted a violation of M.B.'s probation. Under N.C. Gen. Stat. § 7B-2510(e) (2004), if a trial court finds by the greater weight of the evidence that a juvenile has violated the terms of probation, the trial court "may continue the original conditions of probation, modify the conditions of probation, or . . . order a new disposition at the next higher level on the disposition chart in G.S. 7B-2508." Id. Therefore, in this case, the trial court was authorized to order a Level 3 disposition. Instead, the trial court chose to modify the conditions of M.B.'s probation and kept M.B. at a Level 2 disposition. The trial court ordered two statutory Level 2 dispositional alternatives: two twenty-four-hour periods of confinement and residential placement in a group home. See N.C. Gen. Stat. § 7B-2506 (20)-(21) (2004). Our Court is clear that choosing between appropriate dispositional levels is within a trial court's discretion. In re Robinson, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002). A trial court's exercise of discretion in ordering a disposition will not be disturbed unless the trial court's ruling "`is so arbitrary that it could not have been the result of a reasoned decision.'" Id. (quoting Chicora Country Club v. Town of Erwin, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997)). In this case, the evidence shows the trial court's decision to order placement in a group home, a Level 2 dispositional alternative, to be a reasoned decision that protects the public and meets the needs and interests of M.B.
In determining which Level 2 dispositional alternative is appropriate, a trial court "shall consider the needs of the juvenile as indicated by the risk and needs assessment contained in the predisposition report, the appropriate community resources available to meet those needs, and the protection of the public." N.C. Gen. Stat. § 7B-2508(d) (2004). In the present case, M.B.'s risk and needs assessment showed that M.B. was at a medium-level risk for reoffending because he regularly associated with others who were involved in delinquent or criminal activity and because his parents were unwilling to supervise him. The assessment showed that M.B.'s needs level was high because, inter alia, M.B. suffered from a learning disability, had a history of substantiated abuse by a care giver, had a sibling on parole, and needed treatment for Behavioral Emotional Disorder, Attention Deficit and Hyperactive Disorder, and Explosive Mood Disorder. Moreover, the Yadkin County Group Home was an appropriate community resource to meet M.B.'s needs, in that M.B. would receive counseling and would be able to spend weekends with his family. M.B. has not shown that, in light of this evidence, the trial court's decision to impose a Level 2 group home placement amounted to an abuse of discretion. Accordingly, we overrule this assignment of error.
Affirmed.
Chief Judge MARTIN and Judge STEELMAN concur.
Report per Rule 30(e).