STATE OF NORTH CAROLINA v. GERALD L. CARTER, Defendant

No. COA10-648

(Filed 1 March 2011)

**1. Witnesses— four-year-old child—competent**

The trial court did not abuse its discretion in an indecent liberties prosecution by finding that a four-year-old child was competent to testify where defendant argued that the witness had not responded or gave seemingly contradictory answers to some questions. While contradictions and nonresponsive answers may have been appropriate for cross-examination or jury argument, it did not alter the witness's competence.

**2. Indecent Liberties— purpose of sexual gratification—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss a charge of taking indecent liberties where defendant

argued that there was no evidence that he committed any act for the purpose of sexual gratification. The evidence presented by the State established a reasonable inference of defendant's guilt.

**3. Evidence— objection after question answered—no motion to strike answer—other testimony**

The defendant in an indecent liberties prosecution waived his objection to a question about where the victim had been touched by defendant when the victim had not yet identified defendant as the man by whom she was touched. Defendant objected only after the question was answered and made no motion to strike, nor did he object to similar questions.

**4. Evidence— invited error—cross-examination question—answer repeated by counsel**

There was no plain error in an indecent liberties prosecution where defense counsel on cross-examination elicited an answer that "something must have happened" and then repeated the testimony and invited the witness to give her opinion again.

**5. Constitutional Law— effective assistance of counsel—not moving to strike statement by witness**

Defendant's counsel was not ineffective in an indecent liberties prosecution when he did not move to strike a statement by a witness that "something must have happened."

**6. Indictment and Information— indecent liberties—immoral, improper, indecent act not specifically identified**

Although an indecent liberties defendant argued that his indictment did not specifically allege which of his acts was the immoral, improper and indecent liberty, the indictment used the language of the statute and the State was not required to allege an evidentiary basis for the charged offense. Nor did the instruction vary from the indictment.

**7. Grand Juries— information presented to grand jury—variance from instruction**

There was not a fatal variance in an indecent liberties prosecution between the specific act identified in the jury instruction and the evidence defendant speculated was presented to the grand jury.

Appeal by defendant from judgments entered 13 August 2009 by Judge V. Bradford Long in Randolph County Superior Court. Heard in the Court of Appeals 1 December 2010.

*Roy Cooper, Attorney General, by Jennie Wilhelm Hauser, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Barbara S. Blackman, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant Gerald L. Carter was charged in true bills of indictment, in which B.R. was alleged to have been the victim, with first-degree statutory sexual offense with a child under the age of thirteen years, first-degree statutory rape of a child under the age of thirteen years, and taking indecent liberties with a child. The offenses were alleged to have occurred between 18 February 2008 and 27 February 2008. Defendant was also charged in true bills of indictment, in which H.S. was alleged to have been the victim, with first-degree statutory sexual offense with a child under the age of thirteen years and taking indecent liberties with a child. The offenses were alleged to have occurred between 1 November 2007 and 28 February 2008. The charge of first-degree statutory sexual offense with H.S. was dismissed at the close of all the evidence. A jury found defendant guilty of taking indecent liberties with each of the alleged victims, and not guilty of the remaining charges. He appeals from judgments entered upon the jury's verdicts.

The evidence at trial tended to show that defendant lived with his mother, Gladys Carter. Beginning in October 2004, Ms. Carter provided child care in her home for B.R., and, at some time thereafter, for B.R.'s younger cousin, H.S. At the time of the events giving rise to the charges in these cases, B.R. was approximately four-and-a-half years old and H.S. was approximately two-and-a-half years old.

### B.R.

On the evening of 27 February 2008, B.R. reported to her mother and grandmother that defendant had touched her in her private area and "sticks his tail in my butt." Upon further questioning by her grandmother, B.R. reported that "[h]e sticks his tail in my nonny," the word by which she referred to her vagina.

The following day, B.R. was seen at the pediatric clinic where she had been a patient since infancy. She was examined by Dr. Amy Suttle, a pediatrician who has received specialized training in evaluating child sexual maltreatment. Dr. Suttle found that B.R.'s outer labia and inner labia were "red and swollen." Four days later, B.R. returned to Dr. Suttle's office, where she said to Dr. Suttle, without hesitation, "Gerry stuck his tail in my butt where I go. He put his tail in my nonny, too. He did it." She told Dr. Suttle that she was alone with defendant in his room when he touched her, and that she and defendant "were watching some ugly pictures, some girls on the bed . . . [and t]hose boys putting their tails in their butt." B.R. also told Dr. Suttle that another time, "outside in the forest," defendant "stuck his tail right up here" and "pointed to her crotch area." B.R. was also interviewed by Nydia Rolon, a forensic interviewer, on 13 March 2008, and repeated to her that defendant had touched her and "had put his tail in her nonny."

B.R. testified at the trial. At the time of her testimony, she was six years old. She testified that "Gerry stick his tail in my butt and he stuck his finger in my nonny and he made me lick his tail." B.R. said that "[i]t hurted" and that she told him to "quit" but that he did not. When asked what a "nonny" is, B.R. pointed to her genital area and said, "It's the part where ladies don't show." B.R. said that a "tail" is "the things that boys keep in their pants." B.R. said defendant told her to "stick his tail in [her] mouth," and pointed to other places on her body where defendant put his "tail." B.R. testified that she saw "[s]ome white stuff" come out of defendant's "tail" when he "was moving it up and down." B.R. also testified that defendant "made [her] move [his tail] up and down and then he made [her] put [her] lips on it, and then he—he put his tail in [her] mouth and he said shake—put your feet onto the tail, and then started moving it up and down." B.R. said defendant showed her pictures on the computer of boys "sticked their tails in [a girl's] butt." B.R. also testified that defendant showed her a picture of "this girl who had her feet on this boy's tail and she had her mouth on it and going up and down" and said the girl's "feet were slashing" the boy's "tail." B.R. then testified that "he did the same thing that the girl did. He did all those pictures [to B.R.]" She also said that defendant had "real" swords and nunchucks on the walls of his room, and said that she "was scared of the swords" because "they were sharp." When a search warrant was executed at defendant's residence, the officers found Samurai swords and nunchucks hanging along the walls of defendant's bedroom.

H.S.

When H.S.'s mother learned of the allegations made by B.R., she did not question H.S. but stopped taking her to Ms. Carter's house for daycare. A few days later, however, H.S. became ill and her mother attempted to use a rectal thermometer to take H.S.'s temperature. H.S. began kicking and screaming, "Don't hurt me. That's what he did." H.S. said it had happened at Ms. Carter's house. H.S. testified at the trial that, when she had been at Ms. Carter's house, she had been touched. When asked by the prosecutor if she could point to "where [she] got touched," H.S. stepped down from the witness stand, stood in front of the prosecutor's table, and pointed to her genital area for the jury and then again for the judge. H.S.'s grandmother testified that H.S. had told her, more than a year after the alleged date of the offense, that "Gerry" had touched her "privates." In addition, when interviewed by Kimberly F. Madden, a child therapist and forensic interviewer, H.S. talked about how she had hurt her knee in the waiting room, which prompted Ms. Madden to ask H.S. "if any other part of her body ha[d] been hurt or ha[d] gotten hurt." H.S. began "gesturing" and "pointing to her genital area" and "said that Gerry had hurt her." H.S. also said that "Gerry had hurt her with his hands." Ms. Madden then gave H.S. anatomically detailed dolls and said that H.S. "pulled down the anatomically detailed female child's pants down [sic] and pointed at the genital area." When Ms. Madden asked, "what did Gerry hurt you with?," H.S. "undid the doll's pants and exposed the penis and said . . . that Gerry has this." H.S. then picked up the male doll and "bent the hands toward the penis."

---

I.

[1] Defendant first contends the trial court abused its discretion by determining that four-year-old H.S. was competent to testify at trial. Defendant asserts that H.S. should have been found incompetent because she was two-and-a-half years old at the time of the "alleged incident," she was crying when she entered the courtroom and when she took the stand, and, during *voir dire*, she only stated her name "after much prodding" and did not answer when asked her cousin's name or whether she had a cousin.

"There is no age below which one is incompetent as a matter of law to testify." *State v. Cooke*, 278 N.C. 288, 290, 179 S.E.2d 365, 367 (1971); *State v. Turner*, 268 N.C. 225, 230, 150 S.E.2d 406, 410 (1966). "The test of competency is the capacity of the proposed witness to

understand and to relate under the obligation of an oath facts which will assist the jury in determining the truth with respect to the ultimate facts which it will be called upon to decide." *Cooke*, 278 N.C. at 290, 179 S.E.2d at 367; *see Turner*, 268 N.C. at 230, 150 S.E.2d at 410; *see also* N.C. Gen. Stat. § 8C-1, Rule 601(b) (2009) ("A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him, or (2) incapable of understanding the duty of a witness to tell the truth."). "Competency is to be determined at the time the witness is called to testify and rests mainly, if not entirely, in the sound discretion of the trial judge in the light of his examination and observation of the particular witness." *Cooke*, 278 N.C. at 290, 179 S.E.2d at 367; *see also State v. McNeely*, 314 N.C. 451, 457, 333 S.E.2d 738, 742 (1985) (stating that the trial judge's "presence at the *voir dire* hearing allowed him to listen to the child's responses and to observe her demeanor first hand"). "A ruling committed to a trial court's discretion may be upset only when it is shown that it could not have been the result of a reasoned decision." *McNeely*, 314 N.C. at 453, 333 S.E.2d at 740.

In the present case, after considering H.S.'s *voir dire* testimony, the court made the following findings:

One, the witness is four years of age; two the witness was able to answer the following questions asked by the District Attorney. Was the District Attorney Santa Claus, would that be a truth or a lie. The witness answered a lie. If I ask you—the District Attorney further asked, if I was on fire would that be the truth or a lie, the witness answered lie. The District Attorney—the witness then said that people who lie get in trouble. The witness then replied that she would tell the truth in court. The witness was able to demonstrate her age by holding up four fingers when the District Attorney asked her age.

The Court finds that the District Attorney—that the witness is reticent, her voice is very faltering and weak and she appears to be very shy about her testimony, but that she has demonstrated the rudimentary elements of qualifying for being competent as a witness, and that is demonstrating and understanding the difference between truth and fiction and demonstrating an ability to discern the importance of telling the truth. Therefore, the Court will find her competent to testify at this time.

STATE v. CARTER

[210 N.C. App. 156 (2011)]

Now, the Court further finds that the child is testifying from the lap of her mother. The Court further finds that when the questioning initially began, that the mother, as parents of four-year-old children are wont to do when they understand that a child knows the answer to a question but will not answer it, was nodding her head affirmatively to at least two questions. These questions were not the questions asked concerning her competence to testify, but were earlier introductory questions.

The Court again cautions Mother that if Mother, by signal, gesture or by words, gives any type of clue to the child as to an answer, the Court will disqualify the child as a witness and rule her testimony inadmissible.

Defendant concedes that H.S. demonstrated her ability to distinguish between truthful statements and lies, that H.S. said that people who tell lies "get in trouble," and that H.S. promised to tell the truth. Although defendant directs our attention to some questions asked during *voir dire* to which H.S. was non-responsive or gave seemingly contradictory answers, our Supreme Court has recognized that "somewhat vague and self-contradictory" answers given during *voir dire* by a child "might be expected of a little child of such tender years," and do not require a determination that a witness is incompetent to testify. *See McNeely*, 314 N.C. at 457-58, 333 S.E.2d at 742.

Defendant further asserts that H.S. was similarly non-responsive and gave contradictory responses to some of the questions asked when she testified in front of the jury, and suggests that this demonstrated H.S.'s inability to "relate facts" and established that the court should have found H.S. was incompetent to testify. While the contradictions and nonresponsiveness to which defendant refers "may have been an appropriate subject for cross examination or a jury argument, it in no way alters [H.S.'s] competence as a witness." *See State v. Higginbottom*, 312 N.C. 760, 766, 324 S.E.2d 834, 839 (1985), *superceded on other grounds by statute as recognized in State v. Green*, 348 N.C. 588, 605-09, 502 S.E.2d 819, 829-31 (1998). Accordingly, defendant has failed to show that the trial court abused its discretion by determining that H.S. was competent to testify at trial.

II.

[2] Defendant next contends the trial court erred by denying his motion to dismiss the charge of taking indecent liberties with H.S. We find no error.

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." *Id.* at 99, 261 S.E.2d at 117. "The trial court's function is to test whether a *reasonable inference* of the defendant's guilt of the crime charged may be drawn from the evidence." *Id.* "The test of the sufficiency of the evidence to withstand the motion is the same whether the evidence is direct, circumstantial or both." *Id.* "When the motion . . . calls into question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *Id.* (omission in original) (internal quotation marks omitted). "If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *Id.* (internal quotation marks omitted).

"The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom . . . ." *Id.* "The defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982). "[C]ontradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion." *Powell*, 299 N.C. at 99, 261 S.E.2d at 117.

"If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed." *Id.* at 98, 261 S.E.2d at 117. "This is true even though the suspicion so aroused by the evidence is strong." *Id.*

N.C.G.S. § 14-202.1(a)(1) provides that a person is guilty of taking indecent liberties with a child if,

being 16 years of age or more and at least five years older than the child in question, he . . . [w]illfully takes or attempts to take any immoral, improper, or indecent liberties with any child of

either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire . . . .

N.C. Gen. Stat. § 14-202.1(a)(1) (2009); *see State v. Rhodes*, 321 N.C. 102, 104-05, 361 S.E.2d 578, 580 (1987). Here, defendant does not dispute that there was sufficient evidence to establish that, on the date of the charged offense, his age and H.S.'s age satisfied the age elements of N.C.G.S. § 14-202.1(a)(1). Defendant also concedes that "H.S. answered 'yes' when asked if she was touched at [Ms. Carter's]," and further admits that H.S. pointed to her genital area when she was asked at trial where she had been touched when she was at Ms. Carter's house. He also acknowledges that substantive evidence was presented through the testimony of H.S.'s mother that H.S. screamed, "Don't hurt me[; t]hat's what he did," when she attempted to take H.S.'s temperature with a rectal thermometer, and that H.S. said she was at Ms. Carter's house when this happened. H.S.'s mother also testified that she and her husband found H.S. alone with defendant on different occasions when they picked H.S. up from Ms. Carter's house. The testimony of H.S.'s grandmother and Kimberly Madden was corroborative of H.S.'s testimony.

Defendant suggests there was no evidence that he committed any act "conducted for the purpose of sexual gratification." Nevertheless, "a defendant's purpose in committing the act in an indecent liberties case is seldom provable by direct evidence and must ordinarily be proven by inference." *State v. Creech*, 128 N.C. App. 592, 598, 495 S.E.2d 752, 756 (internal quotation marks omitted), *disc. review denied*, 348 N.C. 285, 501 S.E.2d 921 (1998); *see also Rhodes*, 321 N.C. at 105, 361 S.E.2d at 580 ("The fifth element [of N.C.G.S. § 14-202.1(a)(1)], that the action was for the purpose of arousing or gratifying sexual desire, may be inferred from the evidence of the defendant's actions[, and is] . . . sufficient evidence to withstand a motion to dismiss the charge of taking indecent liberties with a child."). Viewing the evidence in the light most favorable to the State, we are not persuaded by defendant's suggestion that the evidence presented "did no more than" "literally convey[] that a man inserted a rectal thermometer" into H.S. Testimony from H.S. and from her mother indicated that H.S. reported being touched in her genital and rectal area at Ms. Carter's house by a male, and H.S.'s mother testified that she had found H.S. alone with defendant on several occasions at Ms. Carter's house. Further, even though "[t]he uncorroborated testimony of a victim is sufficient to convict a defendant under N.C.G.S. 14-202.1 if his or her testimony suffices to establish all of the ele-

ments of the offense," *see State v. Craven,* 312 N.C. 580, 590, 324 S.E.2d 599, 605 (1985), the corroborative testimony from H.S.'s grandmother and Ms. Madden offered by the State—in which H.S. said defendant was the person who had touched her in her genital area and "hurt" her—added further weight and credibility to H.S.'s testimony. *See State v. Ramey,* 318 N.C. 457, 469, 349 S.E.2d 566, 573 (1986) ("In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony."); *see also id.* at 469, 349 S.E.2d at 573-74 (disapproving of earlier cases holding that prior statements, "to the extent that they indicate that additional or 'new' information[] contained in the witness's prior statement but not referred to in his trial testimony, may never be admitted as corroborative evidence"). We conclude that the evidence presented by the State was not merely "sufficient only to raise a suspicion or conjecture," *see Powell,* 299 N.C. at 98, 261 S.E.2d at 117, but established a reasonable inference of defendant's guilt of the crime of taking indecent liberties with H.S. Accordingly, the trial court did not err by denying defendant's motion to dismiss this charge.

III.

[3] Defendant next contends the trial court erred by overruling defendant's objection to the question, "[H.S.], can you point to where Gerry touched you?," because defendant argues that H.S. had not identified him as the man who touched her at Ms. Carter's house at that time she was asked the question by the prosecutor. Nevertheless, defendant did not lodge his objection to the question until after H.S. had already responded, and made no motion to strike her answer. Moreover, defendant failed to object to similar questions asked of H.S., including, "Do you remember telling [your Grandma] about the things you and Gerry did?," and "[D]o you remember anything else about what happened between you and Gerry?" Accordingly, we conclude that defendant waived this objection and overrule this assignment of error. *See, e.g., State v. Burgin,* 313 N.C. 404, 409, 329 S.E.2d 653, 657 (1985) ("Defendant failed to object to most of these questions. The one objection made was lodged after the witness responded to the question. Defendant made no motion to strike the answer, and therefore waived the objection.").

## IV.

Defendant next contends the trial court erred by allowing forensic interviewer Nydia Rolon to offer the following testimony about B.R.: "A child—you know, a child her age with that much sexual knowledge indicates that something happened." Specifically, defendant argues that Ms. Rolon's statement, admitted without objection, was "non-responsive" to defense counsel's question and should have been stricken "since the case rested on the jury's assessment of B.R.'s credibility." Because the statement was admitted without objection, defendant (A) asserts plain error and, in the alternative, (B) claims he was deprived of effective assistance of counsel.

## A.

[4] "Statements elicited by a defendant on cross-examination are, even if error, invited error, by which a defendant cannot be prejudiced as a matter of law." *State v. Gobal*, 186 N.C. App. 308, 319, 651 S.E.2d 279, 287 (2007), *aff'd per curiam*, 362 N.C. 342, 661 S.E.2d 732 (2008); *see also* N.C. Gen. Stat. § 15A-1443(c) (2009) ("A defendant is not prejudiced by . . . error resulting from his own conduct."). In the present case, the following testimony was elicited from Ms. Rolon by defense counsel:

> Q. I understand. But my question is, if you don't mind, did you think it was unimportant that [B.R.] basically turned around and denied Gerry doing anything to her?
>
> A. No.
>
> Q. Then why didn't you put it in your summary?
>
> A. Because I'm stating all the information that the child wrote. And, again, this is a summary of the DVD.
>
> Q. I know, but she put on her—she stated very clearly to you Gerry didn't do it. He didn't do nothing, nothing, nothing. Why didn't you put that in your summary?
>
> A. Children—again, she was feeling like that—the trauma was resurfacing. She was making—trying to make decisions of her answers. *A child—you know, a child her age with that much sexual knowledge indicates that something happened.*
>
> Q. *So you—you were thinking something must have happened.*

**STATE v. CARTER**

[210 N.C. App. 156 (2011)]

A.  Yes.

Q.  Okay. . . .

(Emphasis added.) Even assuming *arguendo* that Ms. Rolon's statement that "something happened" was erroneously admitted, immediately following her statement, defense counsel repeated her testimony, thereby inviting Ms. Rolon to again give her opinion that she thought "something must have happened." Since "a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review," *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001), *supersedeas denied and disc. reviews denied and dismissed as moot*, 355 N.C. 216, 560 S.E.2d 141-42 (2002), defendant's contention that it was plain error for the court to fail to strike Ms. Rolon's statement *sua sponte* is meritless.

B.

[5] "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* at 563, 324 S.E.2d at 248. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, *reh'g denied*, 467 U.S. 1267, 82 L. Ed. 2d 864 (1984). The general rule is "that the incompetency (or one of its many synonyms) of counsel for the defendant in a criminal prosecution is not a Constitutional denial of his right to effective counsel unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice." *State v. Sneed*, 284 N.C. 606, 612, 201 S.E.2d 867, 871 (1974). Since "there can be no precise or 'yardstick' approach in applying the recognized rules of law in this area," "each case must be approached upon an *ad hoc* basis, viewing circumstances as a whole, in order to determine whether an accused has been deprived of effective assistance of counsel." *Id.* at 613, 201 S.E.2d at 872.

Here, defendant suggests that, but for his counsel's failure to move to strike Ms. Rolon's statement, there is a "reasonable probability" that the jury would not have returned a guilty verdict on the charge of taking indecent liberties with B.R. Defendant does not

argue that his counsel erred by repeating Ms. Rolon's statement; in fact, defendant does not even acknowledge that his counsel repeated Ms. Rolon's statement. Instead, defendant asserts only that Ms. Rolon's statement "vouch[ed] for the credibility of a child witness [and] improperly resolve[d] the only factual issue before the jury." After careful review of the substantive and corroborative testimony from all of the witnesses included in the record, much of which has been recounted in this opinion, we are not persuaded that defense counsel's failure to move to strike Ms. Rolon's singular comment amounted to a representation that was "so lacking" as to turn defendant's trial into "a farce and a mockery of justice." *See id.* at 612, 201 S.E.2d at 871. Accordingly, we overrule this error.

V.

**[6]** Finally, defendant contends the trial court erred by denying his motion to dismiss the charge of taking indecent liberties with B.R. because he argues that the "immoral, improper, or indecent libert[y]" identified in the court's instruction to the jury—"placing his penis between the feet of [B.R.]"—fatally varied from the indictment. Again, we find no error.

"[A]n indictment which charges a statutory offense, such as taking indecent liberties with a minor in violation of G.S. § 14-202.1, by using the language of the statute is sufficient, and need not allege the evidentiary basis for the charge." *State v. Miller,* 137 N.C. App. 450, 457, 528 S.E.2d 626, 630 (2000). In other words, "[t]he indictment need not allege specifically which of defendant's acts constituted the immoral, improper and indecent liberty." *Id.* (internal quotation marks omitted).

Further, "[a]s the statute indicates, the crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts." *State v. Hartness,* 326 N.C. 561, 567, 391 S.E.2d 177, 180 (1990). "The evil the legislature sought to prevent in this context was the defendant's performance of *any* immoral, improper, or indecent act in the presence of a child for the purpose of arousing or gratifying sexual desire." *Id.* (emphasis added) (internal quotation marks omitted). "Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial." *Id.*

In the present case, the indictment returned by the grand jury charging defendant with the offense of taking indecent liberties with

B.R. used the language of N.C.G.S. § 14-202.1(a) and (b) to describe the elements of the alleged offense. Thus, the language used by the State in the indictment to charge defendant with the offense of violating N.C.G.S. § 14-202.1 strictly adhered to the enabling language of the statute. Consequently, the State was not required to allege an evidentiary basis for the charged offense. Additionally, the trial judge's instruction regarding what constitutes an indecent liberty in this case "was not derived from the statute, but was rather a clarification of the evidence presented for the jury's benefit." *Hartness*, 326 N.C. at 567, 391 S.E.2d at 181. Therefore, the trial court's instruction to the jury providing an evidentiary basis for the charge of indecent liberties with the specific act of "placing [defedant's] penis between the feet of [B.R.]" did not vary from the indictment and does not require a reversal of defendant's conviction on this charge.

[7] Even so, defendant urges this Court to find error based on his assertion that there was a fatal variance between the specific act identified in the jury instruction as the "immoral, improper, or indecent libert[y]" taken with B.R. and the evidence which defendant speculates was presented to the grand jury. *See* N.C. Gen. Stat. § 15A-623(e) (2009) ("Grand jury proceedings are secret and, except as expressly provided in [Article 31 of the General Statutes], members of the grand jury and all persons present during its sessions shall keep its secrets and refrain from disclosing anything which transpires during any of its sessions."); *State v. Porter*, 303 N.C. 680, 689, 281 S.E.2d 377, 384 (1981) ("An accused in this jurisdiction has no right to obtain a transcript of the grand jury proceedings against him. Such proceedings are considered 'secret.' "). Since defendant fails to direct our attention to any relevant law to support his assertion that this Court must find error based on evidence that may or may not have been presented in the grand jury proceeding, we decline to address defendant's meritless assertion further.

No Error.

Judges McGEE and ERVIN concur.